IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

EDGAR QUINTERO GUTIERREZ,

    Petitioner,

 vs.

DARREL ADAMS, Warden,

    Respondent.

Case No. 2:06-cv-00783 JKS

<u>ORDER</u>

  Petitioner, a state prisoner represented by counsel, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He seeks to challenge his 2003 convictions for second degree murder, shooting into an inhabited dwelling, street terrorism and being a felon in possession of a firearm.  He alleges relief is warranted on the grounds that his due process rights were violated when:  (1) the trial court failed to instruct that witnesses Jesus Lopez and Ricardo Sandoval were accomplices as a matter of law; (2) the prosecutor offered inconsistent theories and facts regarding Petitioner's motive for committing murder and intent to aid and abet the shooting into an inhabited dwelling; and (3) the prosecutor committed misconduct by advancing inconsistent factual and legal theories of liability and vouching for the credibility of witnesses.  Docket No. 1.  Respondent asserts that some of Petitioner's arguments are procedurally barred and that all of them are without merit.  Docket No. 9.  Petitioner did not file a Traverse.  The Petition shall be denied for the reasons set forth below.

**BACKGROUND**

  Petitioner, Jesus Lopez and Ricardo Sandoval, associates of the same criminal street gang, were charged with street terrorism and the 2002 murder of fellow gang member, Joe Angel Rodriguez.  Petitioner and Lopez were further charged with shooting into an inhabited dwelling house.  Lopez and Sandoval both entered into plea agreements with the prosecution.  In exchange for their cooperation and testimony, Lopez pled guilty to voluntary manslaughter and Sandoval pled

1

guilty to being an accessory after the fact to Rodriguez's murder.  In an unpublished opinion filed on March 29, 2005, the California Court of Appeal, Third Appellate District, summarized the testimony given by Lopez and Sandoval:

> [Petitioner], Joe Angel Rodriguez, Daniel Ledesma, Jesus Manriquez, Jesus Lopez, and Ricardo Sandoval were all members of the Vickystown Street Gang.
>
> On September 21, 2002, everyone but Ledesma was in [Petitioner]'s car when Rodriguez received a call on his cell phone. The call was from Rodriguez's sister, who reported that Ledesma had hit Rodriguez's mother in the face.  [Footnote 1]  Rodriguez became angry and said he wanted to go talk to Ledesma.  At Rodriguez's direction, Lopez drove [Petitioner]'s car toward Stiles Place, where he thought Ledesma lived.
>
> > [Footnote 1:  Ledesma was the father of Rodriguez's sister's child, and he got into a fight with Rodriguez's mother when he came over drunk trying to see the child.]
>
> Ledesma's grandparents, the Durans, lived in a house on Stiles Place with one of Ledesma's children.  Although Ledesma had stayed there in the past, he was not living there on September 21, 2002.
>
> When they stopped near Stiles Place, [Petitioner] pulled a semiautomatic pistol from under the dashboard and handed it to Manriquez, who handed the revolver he was carrying to Rodriguez.  Manriquez and Rodriguez then got out of the car and said they were going to go talk to Ledesma.  Shortly thereafter, gunfire rang out, and Manriquez and Rodriguez came running back to the car, having fired numerous shots at the Duran residence.
>
> Later the following morning, [Petitioner], Rodriguez, Lopez, and Sandoval were together at a motel smoking crystal methamphetamine when [Petitioner] said he wanted to go to Linden to get some more.  Lopez drove them in his car, with Rodriguez in the front seat and [Petitioner] and Sandoval in the back seat.  At some point, [Petitioner] directed Lopez to turn off on a dirt road into an orchard.  When they got out of the car, ostensibly to urinate, [Petitioner] shot Rodriguez several times.  After [Petitioner], Lopez, and Sandoval got back in the car, Lopez told [Petitioner] that Rodriguez was getting up, so [Petitioner] got out of the car and shot Rodriguez again.  Rodriguez died from multiple gunshot wounds, having been shot 13 times.  Lopez later turned himself in to the police.

*People v. Gutierrez*, No. C046193, Slip op. at 2-4 (Cal. Ct. App. Mar. 29, 2005) (available in the record as Lodged Document No. 1).

Their testimony was corroborated in many respects by the physical evidence recovered from the two crime scenes and Lopez's garage where Petitioner and Lopez destroyed Petitioner's pistol with a hammer.  Petitioner's videotaped interview with police was also introduced.  In the interview, Petitioner admitted to supplying the pistol to Manriquez but denied any involvement in Rodriguez's murder.

Petitioner mounted a reasonable doubt defense, which centered on discrediting Lopez and Sandoval by showing that there were some inconsistencies between their trial testimony and the statements they initially gave to law enforcement.  Petitioner elected not to testify.

2

The jury found Petitioner guilty on all counts and found true allegations that Petitioner personally used a firearm and that both the murder and the shooting were committed for the benefit of a criminal street gang.  Clerk's Transcript ("CT") at 560-68.  Petitioner was sentenced to an aggregate term of 55 years to life.  *Gutierrez*, No. C046193, Slip op. at 4.

Petitioner's convictions were affirmed by the California Court of Appeal, Third Appellate District, on March 29, 2005.  *Gutierrez*, No. C046193, Slip op. at 18.  The California Supreme Court denied review on June 15, 2005.  *People v. Gutierrez*, No. S133558, Slip op. (Cal. June 15, 2005) (available in the record at  Lodged Document No. 5).  The instant federal petition was timely filed on April 12, 2006.  Docket No. 1.

## LEGAL STANDARD

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts.  *See Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing *Engle v. Isaac*, 456 U.S. 107, 119 (1982)).  A federal writ is not available for an alleged error in the interpretation or application of state law.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149-50 (9th Cir. 2000); *Middleton*, 768 F.2d at 1085.  Habeas corpus cannot be utilized to try state issues *de novo*.  *Milton v. Wainwright*, 407 U.S. 371, 377 (1972).

Because the instant petition was filed after April 24, 1996, any claim therein that was adjudicated by a state court on the merits is governed by the deferential standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Clark v. Murphy*, 331 F.3d 1062, 1067 (9th Cir. 2003).  Where a state court has adjudicated the merits of a petitioner's claim, this Court, under AEDPA, may not grant relief unless the state court decision "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  A state court decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Court] has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 413 (2000).  A state court decision

3

involves an unreasonable application of Supreme Court case law if it "identifies the correct governing legal principle from [the Court's] decisions but unreasonably applies that principle to the particular facts of [a] prisoner's case." *Id*. To qualify as "unreasonable," it must be objectively unreasonable, a substantially higher threshold than merely incorrect. *Schriro v. Landrigan*, 550 U.S. 465, 127 S. Ct. 1933, 1939 (2007).

Clearly established federal law refers only to the holdings of the Supreme Court's decisions in effect at the time of the relevant state-court decision. *Carey v. Musladin*, 549 U.S. 70, 74 (2006). In the absence of an applicable holding of the Supreme Court, it cannot be said that a state court decision is contrary to or an unreasonable application of clearly established federal law. *See id*. at 77. Finally, even if the AEDPA standard is satisfied, the Court cannot grant relief unless the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993); *Fry v. Pliler*, 127 S. Ct. 2321, 2326-27 (2007) (*Brecht* standard continues to apply after enactment of AEDPA).

In applying this standard, a federal district court looks to the last reasoned state court decision as the basis for the state court judgment. *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). The Court presumes that the state court's findings of fact are correct, unless the petitioner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## DISCUSSION

I - Failure to instruct that Lopez and Sandoval were accomplices as a matter of law

Petitioner argues his due process rights were violated when the trial court erroneously failed to instruct the jury that as a matter of law Lopez and Sandoval were accomplices to the Duran residence shooting and that Sandoval was an accomplice to Rodriguez's murder. Docket No. 1 at 7-17. He submits this prejudiced him because California law does not allow a conviction to rest upon the uncorroborated testimony of an accomplice. *Id*. at 8 (quoting Cal. Penal Code § 1111). Respondent argues that Petitioner has failed to raise a federal claim and that his state-law claim is without merit. Docket No. 9 at 29.

"It is not the province of a federal habeas court to reexamine state-court determinations of state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502

U.S. 62, 67-68 (1991).  It is also "well-established proposition that a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973).  To support a collateral attack on the judgment, the question is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process," not merely whether "the instruction is undesirable, erroneous, or even 'universally condemned.'"  *Id*.  This standard applies to omitted instructions as well. *Murtishaw v. Woodford*, 255 F.3d 926, 971 (9th Cir. 2001).  However, where the defect is the failure to give an instruction, the burden is even heavier as an omitted or incomplete instruction is less likely to be prejudicial than an instruction that misstates the law.  *See Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).

The Court of Appeal addressed this claim on direct appeal and found that the trial court had not erred in refusing the instructions:

> The trial court instructed the jury that Lopez was an accomplice in the murder of Rodriguez as a matter of law.  Defendant contends the trial court also should have instructed the jury that Sandoval was an accomplice in the murder as a matter of law, and that Lopez and Sandoval were both accomplices in the shooting at the Duran residence as a matter of law.  He contends the trial court's failure to do so was prejudicial because there was no independent corroboration of Lopez's and Sandoval's testimony to his involvement in the crimes.  In a supplemental brief, he further contends that because Lopez and Sandoval were accomplices as a matter of law and because there was no independent corroboration of their testimony, the evidence was insufficient to sustain his convictions for murder and shooting at an inhabited dwelling.

> "A conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof." (Pen. Code, § 1111.)

> "An 'accomplice' is one who knowingly, voluntarily, and with common intent with the principal offender unites in the commission of the crime." (*People v. Jones* (1967) 254 Cal. App. 2d 200, 213.)  "This . . . encompasses all principals to the crime [citation], including aiders and abettors and coconspirators [citation].  Whether a person is an accomplice is a question of fact for the jury, unless there is no dispute as to either the facts or the inferences to be drawn from them." (*People v. McLain* (1988) 46 Cal.3d 97, 106.)  "If the testimony establishes that the witness was an accomplice as a matter of law, the jury must be so instructed." (*People v. Zapien* (1993) 4 Cal.4th 929, 982.)  "[A] court can decide as a matter of law [that] a witness is . . . an accomplice only when the facts regarding the witness's criminal culpability are 'clear and undisputed.'" (*People v. Williams* (1997) 16 Cal.4th 635, 679.)

> We begin with whether Lopez and/or Sandoval were accomplices as a matter of law in the shooting at the Duran residence.  Defendant's argument that they were is premised on the assertion they aided and abetted that crime.  "[A] person aids and abets the commission of a crime when he or she, acting with (1) knowledge of the unlawful purpose of the perpetrator; and (2) the intent or purpose of committing, encouraging, or facilitating the commission of the offense, (3) by act or advice aids,

promotes, encourages or instigates, the commission of the crime." (*People v. Beeman* (1984) 35 Cal.3d 547, 561.)

At the outset, we can summarily dispose of defendant's contention that Lopez and Sandoval aided and abetted the shooting at the Duran residence because they "went with [defendant] and Rodriguez to switch cars after the shooting . . . and then to a motel," thus aiding and abetting "the escape" from the crime scene. "Merely aiding in the escape of a principal does not result in liability as a principal, but only as an accessory under Penal Code sections 32 and 33. Thus in order to bring [a witness] within the definition of an accomplice it [is] not . . . sufficient to show that he aided in defendant's escape." (*People v. Hoover* (1974) 12 Cal.3d 875, 879, 117 Cal. Rptr. 672.)

What does that leave?  According to defendant, these are the relevant facts that show as a matter of law that Lopez and Sandoval aided and abetted the shooting at the Duran residence:

(1) They were fellow gang members of defendant, Rodriguez, and Manriquez;

(2) They knew Rodriguez had received a telephone call reporting that Ledesma had assaulted his mother;

(3) They knew Rodriguez wanted to see what was up with Ledesma;

(4) They accompanied the other three to Ledesma's residence;

(5) They knew Rodriguez and Manriquez left the car armed with firearms; and

(6) They waited while Rodriguez and Manriquez fired multiple shots into the residence.

The foregoing facts are far from sufficient to compel the conclusion as a matter of law that Lopez and Sandoval aided and abetted the shooting at the Duran residence.  First, with respect to Sandoval, these facts do not establish clearly and without dispute that he, by act or advice, aided, promoted, encouraged, or instigated the shooting.  While Lopez drove the car to the vicinity of the Duran residence, and thus performed an act that could provide a valid basis for concluding he aided and abetted the shooting, defendant points to no evidence that Sandoval said or did anything except go along for the ride to the Duran residence.

Second, with respect to both Lopez and Sandoval, the facts on which defendant relies do not establish clearly and without dispute that either of them knew there was going to be a shooting at the Duran residence or that either of them intended to encourage or facilitate that crime.  Indeed, both men testified they did not know there was going to be a shooting.  If the jury credited their testimony, the jury could have found that neither Lopez nor Sandoval aided and abetted the shooting.

Because the evidence was not clear and undisputed that Lopez and/or Sandoval aided and abetted the shooting at the Duran residence, defendant was not entitled to an instruction that they were accomplices to that crime as a matter of law.

That leaves us with whether Sandoval was an accomplice as a matter of law to the murder of Rodriguez.  Defendant's claim that he is is premised on the following facts:

(1) Lopez told the police that Sandoval knew defendant intended to shoot Rodriguez;

(2) Sandoval rode in the car to the place where defendant shot Rodriguez;

(3) Sandoval got out of the car along with the others to urinate before defendant shot Rodriguez; and

(4) Sandoval fled the crime scene with defendant and Lopez.

These facts are insufficient to compel the conclusion as a matter of law that Sandoval aided and abetted the murder of Rodriguez because they do not establish clearly and without dispute that Sandoval, by act or advice, aided, promoted, encouraged, or instigated the murder. Sandoval's presence in the car on the way to and from the murder scene, and his presence at the murder scene, do not establish he was an accomplice. (*See People v. Stankewitz* (1990) 51 Cal.3d 72, 90 ["an individual's presence at the scene of a crime or failure to prevent its commission" is insufficient "to establish aiding and abetting"].)

Furthermore, even if Sandoval's act of getting out of the car with the others to urinate could be deemed an act that aided and abetted the murder, [Footnote 2] the evidence did not establish clearly and without dispute that when Sandoval got out of the car he knew defendant was going to murder Rodriguez or that he intended to encourage or facilitate that crime. Although Lopez told the police Sandoval knew defendant intended to shoot Rodriguez, Sandoval himself denied being part of any plan to take Rodriguez into the orchard and do something to him. If the jury credited Sandoval's testimony, the jury could have found Sandoval did not aid and abet the murder. Therefore, defendant was not entitled to an instruction that Sandoval was an accomplice to the murder as a matter of law.

[Footnote 2: Defendant suggests that by getting out of the car to urinate, Lopez and Sandoval "lured [Rodriguez] out of the car." According to Sandoval, however, Rodriguez was the first one to get out of the car.]

Because the jury could have found that Lopez and Sandoval were not accomplices to the shooting at the Duran residence, and that Sandoval was not an accomplice to the murder of Rodriguez, no independent corroboration of their testimony was necessary. Accordingly, we need not address defendant's argument that there was no such corroborative evidence.

*Gutierrez*, No. C046193, Slip op. at 5-10.

It is abundantly clear that the evidence at trial was equivocal as to whether Sandoval knew of the unlawful purpose of the perpetrator, intended to commit or encourage the crimes, or did any act that could be construed as aiding or encouraging the commission of the crimes. *See People v. Beeman*, 35 Cal.3d 547, 561, 674 P.2d 1318, 1326 (Cal. 1984). Petitioner's cited cases are inapposite, as they fail to address the liability of someone who is merely present at the scene of the crime and aids in the escape after the fact. The trial court's failure to instruct the jury that Sandoval was an accomplice as a matter of law was not error.

While Lopez drove Rodriguez to the Duran residence knowing that Rodriguez wanted to know "what is up" with Ledesma, an act that aided Rodriguez in the commission of the crime, the evidence did not establish without dispute that Lopez knew of the unlawful purpose or intended to

7

encourage it.  *See id*.  The trial court's failure to instruct the jury that Lopez was an accessory to the Duran shooting as a matter of law was not error.

The trial court allowed the jury to determine if Lopez and Sandoval were accomplices.  CT 426.  Given the equivocal evidence the trial court acted properly.  Accordingly, this Court cannot say that the Court of Appeal's denial of Petitioner's claim was an unreasonable application of clearly established federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

II - Natural and probable consequences instruction

Petitioner's constitutional claim is somewhat ambiguous.  At the beginning of the petition in a section titled "Constitutional/Federal Rights Violated," Petitioner alleges for his second claim that the judgment violated due process because the state court "instructed on the 'natural and probable consequences' doctrine as to the shooting into an inhabited dwelling by Joe Angel Rodriguez as it related to Mr. Gutierrez's conduct."  Docket No. 1 at 4.  The point heading for his legal argument asserts that "the shooting into an inhabited dwelling by Mr. Rodriguez could not have been the natural or probable consequence of Petitioner's act of supplying a firearm."  *Id*. at 17.  However, the body of Petitioner's legal argument sets forth a claim of prosecutorial misconduct in reliance on *Thompson v. Calderon*, 120 F.3d 1045 (9th Cir. 1997).  *Id*. at 17-20.  While it is clear that Petitioner believes his due process rights were violated, it is unclear whether he asserts this is so because:  (1) the trial court erroneously gave the natural and probable consequences instruction; or (2) the prosecutor engaged in misconduct similar to that found in *Thompson*.  As Petitioner explicitly raises prosecutorial misconduct in his third claim with reference to the factual allegations in this claim, the Court will address itself here only to whether Petitioner was deprived of due process by the trial court's natural and probable consequences instruction.

"It is not the province of a federal habeas court to reexamine state-court determinations of state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle*, 502 U.S. at 67-68.  It is also "well-established proposition that a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge."  *Cupp*, 414 U.S. at 146-47.  To support a collateral attack on the judgment, the question is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process," not merely whether "the instruction is undesirable, erroneous, or even 'universally condemned.'"  *Id*.

The Court of Appeal implicitly addressed the appropriateness of the probable and natural consequences instruction in deciding whether there was sufficient evidence for the jury to conclude that Petitioner aided and abetted the Duran residence shooting:

> The prosecutor contended defendant was guilty of shooting at the Duran residence as an aider and abettor because he supplied the car used to get to the residence and one of the guns used in the shooting.  In arguing the elements of aider and abettor liability, the prosecutor offered the jury two alternative theories.

> The prosecutor first argued that defendant actually may have intended to assist Rodriguez and Manriquez in shooting at the house.  This theory, however, tended to conflict with the prosecutor's earlier argument that defendant's murder of Rodriguez was for the gang's benefit because defendant was punishing Rodriguez for shooting at the Duran residence.  Apparently recognizing the inconsistency of these two arguments (i.e., why would defendant have punished Rodriguez for committing a crime defendant intended to aid and abet?), the prosecutor offered the jury an alternate theory of aider and abettor liability for the shooting at the Duran residence.  The prosecutor argued that in giving Rodriguez and Manriquez a second gun, defendant may have intended only to assist them in threatening, hitting, or shooting Ledesma with that gun.  According to the prosecutor, these actions would have constituted either the crime of brandishing of a firearm in a threatening manner or the crime of assault with a firearm, and the shooting at the Duran residence was a natural and probable consequence of these other crimes.

> Defendant suggests the evidence was insufficient to find him guilty of aiding and abetting the shooting at the Duran residence because, since defendant "would execute Rodriguez for that shooting, then it could not have been 'a natural and probable consequence of the commission of the crimes of brandishing a firearm, or assault with a firearm.'" [Footnote 3]  We disagree.

> [Footnote 3:  Although defendant does not expressly frame his argument in terms of the sufficiency of the evidence, he does cite the constitutional requirement that the state must prove every factual element of the crime charged.  Accordingly, we construe this argument as a challenge to the sufficiency of the evidence.]

> The "natural and probable consequences" doctrine "is based on the recognition that 'aiders and abettors should be responsible for the criminal harms they have naturally, probably and foreseeably put in motion.'" (*People v. Prettyman* (1996) 14 Cal.4th 248, 260.)  "The determination whether a particular criminal act was a natural and probable consequence of another criminal act aided and abetted by a defendant requires application of an objective rather than subjective test.  [Citations.]  This does not mean that the issue is to be considered in the abstract as a question of law.  [Citation.]  Rather, the issue is a factual question to be resolved by the jury in light of all of the circumstances surrounding the incident.  [Citations.]  Consequently, the issue does not turn on the defendant's subjective state of mind, but depends upon whether, under all of the circumstances presented, a reasonable person in the defendant's position would have or should have known that the charged offense was a reasonably foreseeable consequence of the act aided and abetted by the defendant." (*People v. Nguyen* (1993) 21 Cal.App.4th 518, 531.)  "An aider and abettor will be responsible for a collateral offense if at any time that he does something that directly or indirectly aids or encourages the primary actor in the commission of a crime, it is reasonably foreseeable that a collateral offense may result." (*Id*. at p. 532.)

> Defendant does not deny there was sufficient evidence for the jury to conclude that when he supplied Rodriguez and Manriquez with a second gun, he intended to assist them in criminal conduct -- either threatening, hitting, or shooting Ledesma with that gun.  According to defendant, however, because shooting at the Duran residence "was such a violation of the gang's own code of behavior that it amounted

to a capitol [sic] offense," the shooting could not have been a reasonably foreseeable consequence of the other crimes defendant intended to aid and abet.

    Defendant is mistaken. The issue here is whether, based on the evidence, the jury reasonably could have found that at the time he supplied a second gun to Rodriguez and Manriquez, it was reasonably foreseeable to a person in defendant's position that they might shoot at the Duran residence, rather than threaten, hit, or shoot at Ledesma with that gun. The evidence was sufficient to support such a finding.

    The prosecution's gang expert testified that "even for gang members, assaulting innocents and kids, is not allowed." He did not testify, however, that shooting at a house with innocent people in it was a "capital offense" within a gang, such that a gang member could not reasonably be expected to commit such an act. Instead, he simply testified that such an act would be "unacceptable to other members of the gang" and "could" subject the gang member who shot at the house to some form of discipline. Later, on cross-examination, he testified that gang members who disagreed with such a shooting would "not necessarily" have to kill the shooter. Indeed, in response to a hypothetical question, the expert agreed that "there would be no reason for them to kill" the shooter if, despite their disagreement with the shooting, "they go on from there and he doesn't bother them and they don't bother him" and "he's not on them for not backing him and they are not on him, [and] they don't continue to give him a hard time for what he did."

    In summary, the evidence did not establish that shooting at a residence with innocent people in it was such an egregious violation of gang "etiquette" that such an act would be unforeseeable to a gang member who gave a gun to another gang member. Thus, it was reasonable for the jury to find that the shooting at the Duran residence was a natural and probable consequence of defendant's giving a gun to Rodriguez and Manriquez.

*Gutierrez*, No. C046193, Slip op. at 10-14.

    Petitioner here argues that the jury should not have been given the option of finding that the Duran residence shooting was the natural and probable consequence of Petitioner giving Manriquez a pistol. In affirming the sufficiency of the evidence for the jury's determination, the court explicitly found that it was appropriate for the jury to rely on this evidence. The Court agrees. The instruction was entirely appropriate and did not violate Petitioner's due process.

III - Prosecutorial misconduct

    Petitioner claims that the prosecutor committed misconduct by advancing inconsistent theories of liability and vouching for the credibility of Lopez and Sandoval during closing argument. Respondent argues the prosecutorial misconduct claims are procedurally barred and meritless.

    First, the Court finds that Petitioner's prosecutorial misconduct claims are procedurally barred. The Court of Appeal addressed these claims and found them forfeited under the contemporaneous objection rule. *See Gutierrez*, No. C046193, Slip op. at 14-15. As of the date the default was imposed by the appellate court on March 29, 2005, the contemporaneous objection bar, which requires an objection at the time of trial to preserve an issue for appeal, was applied by state

courts independent of federal law. *Vansickel v. White*, 166 F.3d 953, 957-58 (9th Cir. 1999) (recognizing and applying California's contemporaneous objection rule in affirming denial of a federal petition on the ground of procedural default). Further, the Ninth Circuit has consistently held that California's contemporaneous objection rule is an "adequate" procedural bar. *See, e.g., Davis v. Woodford*, 384 F.3d 628, 653-54 (9th Cir. 2004). As Petitioner has alleged neither cause and prejudice nor actual innocence, his claim is procedurally barred. *See Vansickel*, 166 F.3d at 957-58. Further, even if these claims were not procedurally barred, the Court would deny them on the merits.

 *1. Inconsistent arguments*

 Petitioner argues that his due process rights were violated when the prosecution offered inconsistent theories regarding Petitioner's motive for murdering Rodriguez and his intent to aid and abet the Duran residence shooting. Docket No. 1 at 17-20. More specifically, he argues it was error for the prosecution to simultaneously argue that the Duran residence shooting was the natural and probable consequence of Petitioner giving Manriquez a pistol and that Petitioner killed Rodriguez because Rodriguez had violated the gang's unwritten code by shooting indiscriminately into the Duran residence. In support of this argument, Petitioner relies entirely on *Thompson v. Calderon*, 120 F.3d 1045 (9th Cir. 1997).

 In *Thompson*, two men, Thompson and Leitch, were implicated in the murder and rape of a female victim. *Thompson*, 120 F.3d at 1047, 1055. During the preliminary hearing while both Thompson and Leitch were still joined as co-defendants, the prosecution's theory was that Leitch wanted the victim dead because the victim had interfered with Leitch's attempts to reconcile with his ex-wife. *Id* at 1055. The prosecutor theorized that Leitch enlisted the help of Thompson to kill the victim. *Id*. In support of this theory, the prosecution presented testimony from four jailhouse informants who claimed to have obtained confessions from Thompson. *Id*. One of the informants testified that Thompson told him that on the night of the murder, he (Thompson) engaged in consensual sex with the victim and then when Leitch returned home, the two executed Leitch's "plan," and killed the victim. *Id*.

 Subsequently, after the co-defendants were severed, the prosecutor presented two new jailhouse informants at Thompson's trial. *Thompson*, 120 F.3d at 1056. The new informants testified that Thompson had confessed to raping and killing the victim before Leitch came home, and that he (Thompson) had killed the victim to prevent her from reporting the rape. *Id*. The prosecutor argued that the sole motive for the murder was Thompson's desire to cover-up the alleged

rape. *Id.* at 1057. He further argued that there was no evidence that Leitch was ever in the victim's apartment on the night she was murdered. *Id.* Thompson was convicted of first degree murder and sentenced to death. *Id.* at 1047.

Thereafter, at Leitch's trial, the prosecutor called defense witnesses from Thompson's trial even though he had objected to their testimony at Thompson's trial. *Thompson*, 120 F.3d at 1056. Those witnesses testified about Leitch's violent disposition, his threats towards the victim, and his motive to kill the victim. *Id.* The prosecution returned to its original theory of the crime and argued that Leitch was the only person who had a motive to kill the victim. *Id.* at 1056-57. He further argued that Leitch and Thompson were both inside the victim's apartment on the night of her murder. *Id.* at 1057.

Given the prosecutor's aforementioned conduct, the Ninth Circuit found that Thompson was deprived his right to due process because the prosecutor "manipulated evidence and witnesses, argued inconsistent motives, and at Leitch's trial essentially ridiculed the theory he had used to obtain a conviction and death sentence at Thompson's trial." *Thompson*, 120 F.3d at 1057. The court further stated that a prosecutor could not offer inconsistent theories and facts regarding the same crime in order to convict two defendants at separate trials. *Id.* at 1058.

First, while it is clear that due process guarantees a fundamentally fair trial,[1] the Court can find no holding of the United States Supreme Court addressing whether a prosecutor's argument of inconsistent motives in the same trial renders that trial fundamentally unfair. In the absence of an applicable holding, this court cannot find the state court's decision was an unreasonable application of clearly established federal law. *Carey*, 549 U.S. at 77. Second, the prosecutor in this case did nothing like the misconduct in *Thompson*. The prosecutor in this case introduced one body of evidence before one jury against one defendant and merely offered two alternative theories for the Petitioner's liability as an aider and abettor. *See Gutierrez*, No. C046193, Slip op. at 11. There was nothing fundamentally unfair about this conduct.

*2. Vouching*

Petitioner argues the prosecutor engaged in misconduct by vouching for Lopez and Sandoval during summation.

---

[1]*See, e.g., Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 24-25 (1981).

Prosecutors have a special duty as the representative of the State:  "He may prosecute with earnestness and vigor -- indeed, he should do so.  But, while he may strike hard blows, he is not at liberty to strike foul ones."  *Berger v. United States*, 295 U.S. 78, 88 (1935).  It is well established that prosecutors may not vouch for their witnesses' truthfulness.  *United States v. Molina*, 934 F.2d 1440, 1444-45 (9th Cir. 1991).  Vouching is problematic both because it lends the prestige of the prosecutor's office to the witness and because the jury may assume the prosecutor's comments are based on facts not presented to the jury.  *Id.* at 1445.

A writ of habeas corpus will not issue for prosecutorial misconduct unless the conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)).  In order to be entitled to habeas relief, a petitioner must demonstrate that he suffered actual prejudice because the prosecutor's comments had a substantial and injurious effect or influence in determining the jury's verdict.  *See Brecht*, 507 U.S. at 636.

During summation, the prosecutor made the following remarks:

> And I hopefully don't have to emphasize or point out the obvious.  There's only three people alive that know what happened to Joe Angel Rodriguez that night.  One of them's sitting over there and the other two are Ricardo Sandoval and Jesus Lopez.

> And as credible as they may have seemed from the stand and as -- and as much corroboration as there was for them, it was not my feeling that you would feel comfortable hearing from just one of them.  And so we cut deals for both of them.  And we did as best as we could to cut a deal that seemed to be appropriate and commensurate with the evidence that we had on them.

> There was no evidence that you ever heard that Ricardo Sandoval helped in any way the shooting at Stiles, or that he helped in any way to shoot and kill Tiny.  And that's why he got a much more beneficial deal than Jesus Lopez and that's why he walked in the back door and Jesus came in the side door.

> But, hopefully, if you disagree with those deals that we struck, or you don't like the time, take it out on me later.  But don't -- don't cut him a break, because he is a cold-blooded premeditated murderer and there was no reason to do what he did.

RT 915.

Viewed in their entirety, these comments were not vouching.  The prosecutor merely explained that the witnesses received deals because he felt it was important for both of them to testify, and pointed to the absence of evidence *at trial* to explain why Sandoval received a better deal than Lopez.  At no time did the prosecutor vouch for the veracity of the witnesses.  Even assuming these comments did constitute vouching, it cannot be said, given the fleeting nature of these remarks,

that they so infected the entire trial with unfairness as to make his conviction a denial of due process. *See, e.g., Duckett v. Godinez*, 67 F.3d 734, 743 (9th Cir. 1995).

## CONCLUSION

Petitioner's prosecutorial misconduct claims are both procedurally barred and meritless. The balance of his claims fail on the merits. Further, as no reasonable jurist could debate whether the petition should have been resolved in a different manner, the Court declines to issue a Certificate of Appealability.[2] Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Petitioner's application for writ of habeas corpus is DENIED;

2. The Court declines to issue a Certificate of Appealability; and

3. The Clerk shall enter judgment accordingly.

Dated this the 5th day of February 2009.

/s/ James K. Singleton, Jr.
**JAMES K. SINGLETON, JR.**
United States District Judge

---

[2]A district court may grant a certificate of appealability only if a petitioner makes a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). "To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that . . . includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 482 (2000) (internal quotation marks and citations omitted).